UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:

ISABELLE ONANA NDONGO,

                          Plaintiff,

v.

BANK OF CHINA LIMITED, and
DONGKUN CHU a/k/a MARVIN CHU,
individually,

                          Defendants.

No. 22-cv-05896 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Isabelle Onana Ndongo ("Plaintiff") brings this action against Defendants Bank of China Limited and Dongkun Chu (collectively, "Defendants") for employment discrimination, retaliation, and hostile work environment under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"). Defendants now move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' motion is granted, albeit without prejudice.

## BACKGROUND

The following facts are drawn from Plaintiff's Complaint, which, on a motion to dismiss, the Court must assume to be true. *See Lynch v. United States*, 952 F.3d 67, 74-75 (2d Cir. 2020). Plaintiff self-identifies as a "sixty (60) year-old black/African American woman of Cameroonian descent." Compl. ¶ 6. In August 2017, she was hired by Defendant Bank of China Limited ("Bank of China") as an Assistant Vice President in the Operational Risk Management Department. *Id.* ¶ 17. She brought over fifteen years of operational risk management experience to the role, and she was "tasked with revamping and reengineering the risk assessment tool" used by Bank of

China.  *Id.* ¶¶ 17-18.  "[L]eading a team of four," Plaintiff was "able to successfully develop two prototypes of a risk assessment tool," and one of those prototypes was "deemed 'viable' and was scheduled to launch as a program for use" in January 2020.  *Id.* ¶¶ 21, 25.

In August 2019, Defendants hired a "white, younger, male" named Gregory Leeser, who also occupied an Assistant Vice President role and allegedly earned more money than Plaintiff. *Id.* ¶ 26.  A month later, while Plaintiff was on a scheduled vacation, she discovered that Bank of China "eliminated her entire racially-diverse team in her absence."  *Id.* ¶ 27.  Around the same time, Bank of China appointed Defendant Chu as the new Senior Vice President of the Operational Risk Management Department.  *Id.* ¶ 28.  According to the Complaint, Chu "levelled unfair and unwarranted criticism at Plaintiff's previous, racially-diverse team, calling them 'incompetent.'" *Id.* ¶ 30.  He also informed Plaintiff that Defendants "decided to go a different route" with Plaintiff's risk assessment tool, which she asserts, "impl[ied] that the said program would no longer be launched, as scheduled, in January 2020, or at all," even though "Defendants continued to use the said program that had been designed and created by Ms. Ndongo and her team."  *Id.* ¶¶ 32-33.

Over the next few months, Plaintiff alleges that she was subject to various "hostile and offensive" comments made by Chu.  *Id.* ¶ 43.  For example, in September 2019, Chu informed Plaintiff that another employee, an individual named John Lawrencelle, had complained about Plaintiff being "rude."  When Plaintiff tried to resolve the matter by requesting a joint meeting, Chu refused to hold the meeting and "referr[ed] to Ms. Ndongo as too 'assertive.'"  *Id.* ¶ 37. Plaintiff further alleges that Chu approached Leeser about Lawrencelle's purported complaint, and when Leeser "confirmed that Plaintiff had not been rude to [Lawrencelle]," Chu "advised Leeser to 'decide whose team you are on,'" while also warning Leeser that Chu had the Human Resources

department "wrapped around his fingers." *Id.* ¶¶ 47-48.   In another instance, when Plaintiff submitted requested analytics to Chu, he allegedly "berated her, subjecting her to a verbal onslaught of false and disparaging [sic] about her professional reputation." *Id.* ¶ 53.   According to Plaintiff, "similarly situated Asian and Chinese employees," "white and Caucasian employees," "male employees," and "younger employees" were not subjected to the same "disparaging accusations and comments." *Id.* ¶¶ 56-59.

In early October 2019, Chu promoted Leeser to head of the division over Plaintiff, even though Plaintiff had "more significantly [sic] experience and was more senior than Mr. Leeser." *Id.* ¶ 50.   Plaintiff was then informed that "she would be stripped of her leadership role," and that her leadership responsibilities would be transferred to Leeser.   *Id.* ¶¶ 67, 69.   Chu also hired a "younger, Asian, male" named Henry Quach to serve as Vice President, and "directed Ms. Ndongo to report to him."   *Id.* ¶ 70.   Plaintiff alleges that she was "never offered the opportunity to apply for the role," and that "Mr. Quach had less experience than Ms. Ndongo and was significantly less qualified for the role."   *Id.*   Around the same time, Bank of China "gave salary increases," but Plaintiff's salary was not increased.   *Id.* ¶ 62.

On October 11, 2019, several days after Plaintiff was allegedly demoted, she met with Chu to "complain about the hostile work environment his discriminatory comments and conduct had created."   *Id.* ¶ 71.   In this meeting, Chu made "spurious claims that Plaintiff's team was 'afraid of [her]'" and called Plaintiff "abnormal."   *Id.* ¶¶ 72, 74.   Rather than taking any corrective action, Chu allegedly "began to retaliate against Plaintiff" by "saddling her with disproportionate, excessive additional responsibilities tied to unreasonable deadlines, fabricating reasons for threatened and actual reprimands, disruptions to her work schedule, belittling her in front of

colleagues, canceling meetings with her, excluding and alienating her, and unjustified and unwarranted negative evaluations." *Id.* ¶ 78.  The Complaint lists the following examples:

- On November 20, 2019, Plaintiff "was accused of violating [Bank of China's] Code of Conduct policy for purportedly making an off-the-cuff joke with Leeser regarding her likely termination." *Id.* ¶ 79.  Chu allegedly made these accusations "in the presence of more of Plaintiff's younger white and Asian male co-workers." *Id.* ¶ 80.

- On November 28, 2019, Defendants "scheduled closing at 3PM to allow [Bank of China] employees to leave work early in observance of Thanksgiving holiday celebrations," but they "deliberately prolonged Plaintiff's workday, causing her to stay until or about 6PM." *Id.* ¶¶ 82-83.

- When Chu went on paternity leave, he instructed Leeser and Quach to "keep Plaintiff under strict observation" while he was away, which "had the purpose and effect of undermining Plaintiff's professional reputation in the eyes of her co-workers." *Id.* ¶¶ 84-85.

- Plaintiff requested a promotion to Vice President, and was told that "she would be in line for the promotion if she was able to produce an effective risk assessment tool." *Id.* ¶ 87.  Chu and Quach then allegedly held a meeting with Bank of China's risk partners, where they presented the risk assessment tool that Plaintiff "had already developed and produced," but "deliberately presented Plaintiff's idea as if it were their own and denied Plaintiff any credit or attribution." *Id.* ¶¶ 88-89.  Although the risk assessment tool was "rebranded," it included "the same ideas, strategies and proposals" as the tool Plaintiff had developed. *Id.*  Plaintiff was present at this meeting and felt "humiliated." *Id.* ¶ 90.  She did not receive the requested promotion. *Id.* ¶ 92.

- Defendants assigned Plaintiff "sole responsibility to perform [Bank of China's] quarterly risk control self-assessment," even though that is a task "normally performed by a team of at least four (4) people." *Id.* ¶¶ 93-94.  Defendants also assigned Plaintiff to perform the bank's enterprise risk assessment and did not provide Plaintiff with the "necessary procedure manuals," even though Plaintiff normally does not perform that task. *Id.* ¶¶ 95-97.  Plaintiff was thus "forced to work late most days in order to autodidactically learn the tools used to complete the said enterprise risk assessment." *Id.* ¶ 98.

- In March 2020, when the COVID-19 pandemic began, Defendants "sent a bankwide notification" to everyone except Plaintiff, instructing employees to refrain from traveling to the office. *Id.* ¶¶ 100-01.  Plaintiff allegedly traveled to the office and was the only one there. *Id.* ¶ 102.

- Around the same time, Defendants "refused and/or failed to provide Plaintiff with a VPN token," which "was required to login and to access the employee network." *Id.* ¶ 105.  Defendants then "deliberately assigned Plaintiff time-sensitive tasks that required access to the employee network in [sic] the knowledge that they did not provide her with the said VPN token." *Id.* ¶ 106.

- "Shortly thereafter," Defendants gave Plaintiff "a bogus and unwarranted negative performance appraisal, drastically lowering her rating from B+ to D."  *Id.* ¶ 108.

According to Plaintiff, these events created a "discriminatory, hostile, retaliatory, and intolerable work environment," which led Plaintiff to be "constructively discharged" in May 2020 from Bank of China.  *Id.* ¶ 109.

On June 3, 2022, Plaintiff filed a complaint in the Supreme Court of the State of New York, New York County (the "Complaint"), alleging claims of discrimination based on age, gender, race, color, and national origin, in violation of the NYSHRL, N.Y. Exec. Law § 296(1)(a), and NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a); hostile work environment in violation of the NYSHRL, N.Y. Exec. Law § 296(1)(h); retaliation in violation of the NYSHRL, N.Y. Exec. Law § 296(7), and NYCHRL, N.Y.C. Admin. Code § 8-107(1)(e); aiding and abetting in violation of the NYSHRL, N.Y. Exec. Law § 296(6), and NYCHRL, N.Y.C. Admin Code. § 8-107(6); and supervisory liability in violation of the NYCHRL, N.Y.C. Admin. Code § 8-107(13).[1]  Defendants removed the case to federal court on July 11, 2022 and now move to dismiss the Complaint for failure to state a claim.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The Court must accept as true all factual allegations and draw all reasonable

---

[1] Plaintiff also alleged interference in violation of the NYCHRL, N.Y.C. Admin. Code § 8-107(19), but withdrew that claim in her opposition to Defendants' motion to dismiss.  *See* Pl. Opp. 20.

inferences in Plaintiffs' favor, *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008), but it need not credit "mere conclusory statements," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief,'" and the complaint must be dismissed. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## DISCUSSION

### I.    Discrimination Claims

"[C]laims of employment discrimination under the NYCHRL are analyzed under the same *McDonnell Douglas* framework applicable to Title VII, Section 1983, and NYSHRL claims." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 577 (S.D.N.Y. 2011). "Under this framework, at the summary judgment stage, a plaintiff must first demonstrate a prima facie case of employment discrimination by showing that: '(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.'" *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020) (quoting *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019)). "The burden of production then shifts to the defendant to offer a legitimate, non-discriminatory reason for the allegedly discriminatory conduct." *Id.* (citing *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015)). "Upon such a showing, the

plaintiff must demonstrate that the reasons offered by the defendant are a mere pretext for discrimination." *Id.* (citing *Littlejohn*, 795 F.3d at 307-08).

At the motion-to-dismiss stage, however, "a plaintiff is not required to plead a prima facie case under *McDonnell Douglas* . . . to defeat a motion to dismiss." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Rather, "a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation'" for the case to move forward. *Id.* (quoting *Littlejohn*, 795 F.3d at 306). "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312 (internal quotation marks omitted).

Although the NYCHRL and NYSHRL are analyzed under same framework, they are subject to different standards. Under the NYSHRL, the protected characteristic must be the "but-for" cause of the adverse action, *see Marcus v. Leviton Mfg. Co.*, 661 F. App'x 29, 33 (2d Cir. 2016), whereas under the NYCHRL, "a plaintiff need allege only that discrimination was a motivating factor for the adverse employment action," *White v. Bridge Inc.*, 2019 WL 4805896, at *5 (S.D.N.Y. Sept. 30, 2019). However, "[e]ven under the more liberal NYCHRL, a plaintiff must allege facts giving rise to an inference of discrimination based on [a protected characteristic] to prevail." *Moore v. Verizon*, 2016 WL 825001, at *8 (S.D.N.Y. Feb. 5, 2016) (citing *Gorzynski v. Jet Blue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)).

The Complaint relies on three discernible theories of discrimination: disparate treatment, failure to promote, and ethnically degrading comments. Defendants argue that Plaintiff fails to

raise a plausible inference of discrimination under any of these theories.  The Court will address each in turn.

### A.  Disparate Treatment

"A showing of disparate treatment—that is, a showing that the employer treated [a] plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination."  *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). In order to succeed on a disparate treatment claim, a plaintiff "must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself."  *Id.* (quoting *Graham*, 230 F.3d at 39).  "Employment characteristics which can support a finding that two employees are 'similarly situated' include 'similarities in education, seniority, performance, and specific work duties,' and similar requirements for skill, effort, and responsibility for jobs performed 'under similar working conditions.'"  *Potash v. Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 580 (S.D.N.Y. 2013) (internal citation and quotation marks omitted); *see also Graham*, 230 F.3d at 40 (observing that "[w]hat constitutes 'all material respects' . . . varies somewhat from case to case," but "there should be an objectively identifiable basis for comparability").

Plaintiff repeatedly alleges that she was subject to mistreatment not experienced by co-workers who were younger, male, and not African-American or black, but she does so in purely conclusory fashion.  *See* Compl. ¶¶ 31, 39-42, 56-59, 63-66, 83, 91.  She fails to plead, in particular, any specific factual matter establishing that her co-workers were "similarly situated" to her "in all material respects."  In Plaintiff's opposition to the motion to dismiss, she asserts that she "worked under the same supervisor as other Assistant Vice-President [sic] and lower employees within her department."  Pl. Opp. 7.  It is unclear, however, who these other employees

were, what qualifications they had, and what their job responsibilities entailed.   Indeed, as Defendants point out, Plaintiff does not even identify her "similarly situated" co-workers by name. The only individuals identified in the Complaint, other than Defendant Chu, are Gregory Leeser, Henry Quach, and John Lawrencelle.   But according to the Complaint, Leeser was promoted to "head of the division," and Quach was hired as a Vice President for Plaintiff to "report to," so it is not plausible that either of them had the same supervisor as Plaintiff.   Compl. ¶¶ 50, 70. Lawrencelle, moreover, was a "project manager" while Plaintiff was an Assistant Vice President, *id.* ¶ 34, so it is also not plausible that Plaintiff and Lawrencelle were "similarly situated."

In any event, even if this single assertion regarding Plaintiff's supervisor were enough to plausibly allege that she was "similarly situated in all material respects" to her co-workers, this allegation appears nowhere in the Complaint, and thus cannot defeat a motion to dismiss.   *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) ("In considering a motion to dismiss for failure to state a claim under [Federal Rule of Civil Procedure] 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.").   Therefore, Plaintiff's conclusory allegations of disparate treatment do not plausibly raise an inference of discrimination.

### B. Failure-to-Promote

To raise an inference of discrimination in a failure-to-promote claim, a plaintiff must allege: "(1) that [s]he is a member of a protected class; (2) that [s]he applied for a promotion to a position for which [s]he was qualified; (3) that [s]he was rejected for the position; and (4) after this rejection, the position was filled by someone outside the protected class who was similarly or less well qualified than the plaintiff."  *Brophy v. Chao*, 2019 WL 498251, at *4 (S.D.N.Y. Feb. 7, 2019) (internal quotation marks omitted).

Plaintiff's failure-to-promote theory fails for two reasons.  First, she does not clearly allege that she applied for the promotion to Vice President and was formally rejected, only that she "requested" it and was "passed over."  *See* Compl. ¶ 86, 92.  But a plaintiff relying on a failure-to-promote theory must allege "that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion."  *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 769 (2d Cir. 2015) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998)).  To the extent that Plaintiff's "request" for a promotion counts as an application, she does not allege that "*after* this rejection, the position was filled by someone outside the protected class who was similarly or less well qualified than the plaintiff."  *Brophy*, 2019 WL 498251, at *4 (emphasis added).  Plaintiff does allege that Leeser, who was promoted to "head of the division," and Quach, who was hired as a Vice President, were both less qualified than her and outside the relevant protected classes. *See* Compl. ¶¶ 26, 50, 70.  According to Plaintiff's own timeline, however, Leeser was promoted and Quach was hired before Plaintiff requested a promotion to Vice President.  The Complaint contains no allegations as to who was promoted instead of Plaintiff or whether a Vice President position was even open.[2]  Thus, Plaintiff's failure-to-promote theory fails to raise an inference of discrimination.

### C.  Ethnically Degrading Comments

Finally, Plaintiff points to four "harassing and offensive terms" that she claims were used against her—"abnormal," "rude," "too assertive," and "incompetent"—which she argues "feed into cruel and offensive stereotypes about older, black, African American women in the

---

[2] According to the Complaint, Plaintiff was told that "she would be in line for the promotion if she was able to produce an effective risk assessment tool."  Compl. ¶ 87.  The fact that Plaintiff would be "in line" for a promotion does not indicate that a Vice President position was actually open at the time, and Plaintiff makes no allegations to that effect.

workplace." Pl. Opp. 6; *see* Compl. ¶¶ 30, 34, 37, 74. But for each of these instances, Plaintiff does not "provide any allegations that would justify an inference that [these] facially neutral comments were actually related to [her] protected characteristics." *Williams v. Victoria's Secret*, 2017 WL 384787, at *8 (S.D.N.Y. Jan. 27, 2017) (alterations omitted) (quoting *Opoku v. Brega*, 2016 WL 5720807, at *8 (S.D.N.Y. Sept. 30, 2016)). For example, she claims that Chu called her "abnormal" in a meeting where she complained about his workplace conduct, but she provides almost no detail as to what was discussed in that meeting, what she said to Chu, how he responded, and how the "abnormal" comment arose. Plaintiff asserts, in conclusory fashion, that "abnormal" is a "clearly racist code word used by Defendants to make black and African American people feel as if they don't belong at [Bank of China] due to their race." Compl. ¶ 74. These allegations do not plausibly raise an inference of discrimination. *See Marseille v. Mount Sinai Hosp.*, 2022 WL 14700981, at *2 (2d Cir. Oct. 26, 2022) (rejecting the plaintiff's argument that "aggressive" alludes to a racial stereotype, because "aggressive" is a "facially race-neutral term, and [the plaintiff] has 'failed to offer evidence that could lead a reasonable jury to conclude that the statement in context actually reflected the speaker's use of this language in a racially coded manner'" (quoting *Cadet-Legros v. N.Y. Univ. Hosp. Ctr.*, 21 N.Y.S.3d 221, 228-29 (1st Dep't 2015))).

In summary, Plaintiff does not raise a plausible inference of discrimination, and as a result, fails to plausibly allege that her protected characteristics were the "motivating factor" of any adverse action, as required under the NYCHRL, or the "but-for" cause, as required under the NYSHRL. Plaintiff's discrimination claims are thus dismissed.

## II.   Retaliation Claims

"For a retaliation claim to survive a motion to dismiss, 'the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against her, (2)

because she has opposed any unlawful employment practice.'" *McHenry v. Fox New Network, LLC*, 510 F. Supp. 3d 51, 67 (S.D.N.Y. 2020) (quoting *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018)). "The elements of retaliation under Title VII, the NYSHRL, and NYCHRL are 'identical,' except that the NYCHRL employs a broader standard of an 'adverse employment action' than the federal and state statutes." *Green v. Mount Sinai Health Sys., Inc.*, 2019 WL 4392691, at *3 (S.D.N.Y. Sept. 12, 2019) (quoting *Nieblas-Lov v. N.Y. City Hous. Auth.*, 165 F. Supp. 3d 51, 70 (S.D.N.Y. 2016)). "Under the NYCHRL, adverse action is any action that would be reasonably likely to deter a person from engaging in a protected activity." *Scott-Robinson v. City of New York*, 2016 WL 7378775, at *4 (citing *Pilgrim v. McGraw-Hill Cos., Inc.*, 599 F. Supp. 2d 462, 469 (S.D.N.Y. 2009)); *see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013). Retaliation claims that fail under the "more lenient" NYCHRL standard necessarily fail under the NYSHRL standard as well. *See Heron v. Medrite Testing, LLC*, 2022 WL 1214179, at *7 (S.D.N.Y. Apr. 25, 2022).

Defendants first argue that Plaintiff fails to plead that she "opposed any unlawful employment practice"—in other words, that she engaged in protected activity. The Court disagrees. Protected activity may include "informal protests of discriminatory employment practices," *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990), as long as "such informal complaints [are] sufficiently specific to make it clear that the employee is complaining about conduct prohibited by" an anti-discrimination statute, *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012). By contrast, "[g]eneralized complaints about a supervisor's treatment are insufficient." *Id.* at 110. Plaintiff alleges that "[o]n or about October 11, 2019, Plaintiff met Chu to complain about the hostile work environment his discriminatory comments and conduct had created." Compl. ¶ 71. While this allegation is indeed somewhat vague, it specifically references

Chu's "discriminatory comments and conduct," and it is logically referring to the alleged conduct described in the preceding paragraphs. *See id.* ¶¶ 34-70.  Therefore, the Court can reasonably infer that Plaintiff's complaint, which was made on a specific date to a specific person, was more than a "generalized complaint about perceived mistreatment" but rather included "a specific connection to discrimination based on membership in a protected class." *Whitley v. Montefiore Medical Grp.*, 2016 WL 1267788, at *11 (S.D.N.Y. Mar. 30, 2016); *cf., e.g.*, *Kendricks v. Westhab, Inc.*, 163 F. Supp. 2d 263, 271 (S.D.N.Y. 2001) (concluding that the plaintiff failed to plausibly allege protected activity because he referred generally to "protests" and his "outspoken ways," but "[did] not specify what he said or when he said it").  Plaintiff has thus plausibly alleged that she engaged in protected activity when she complained to Chu about his "discriminatory comments and conduct" on October 11, 2019.

Nevertheless, Plaintiff's retaliation claim fails as she does not plausibly allege retaliatory acts that would be "reasonably likely to deter a person" from engaging in protected activity.  Even under the NYCHRL's "relatively liberal standard," "petty slights or minor annoyances that often take place at work" are not actionable retaliation.  *Scott-Robinson*, 2016 WL 7378775, at *4-5 (quoting *Burlington N. & Santa Fe Ry., Co. v. White*, 548 U.S. 53, 68 (2006)); *see also Mihalik*, 715 F.3d at 112 ("[T]he NYCHRL is not a general civility code, and a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by . . . retaliatory motives, or if the defendant proves the conduct was nothing more than 'petty slights or trivial inconveniences.'" (internal citations omitted)).  Plaintiff's assertion that she once had to stay at work three hours longer than closing time; was given two tasks she normally did not perform; once traveled to the office when she was unaware others were instructed to stay at home; and was not able to access the virtual network at the start of the COVID-19 pandemic, as alleged, all amount to "petty slights"

or "trivial inconveniences" that "often take place at work." *See Dudley v. N.Y.C. Hous. Auth.*, 2014 WL 5003799, at *29 (S.D.N.Y. Sept. 30, 2014) (concluding that the "change in [the plaintiff's] work schedule . . . was nothing more than an inconvenience, and such trivial matters do not constitute retaliatory actions even under the NYCHRL's liberal standard, let alone the 'materially adverse' standard of Title VII and the NYSHRL").[3]

Of course, as the Supreme Court has cautioned, "the significance of any given act of retaliation will often depend upon the particular circumstances"; for example, "[a] supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight.  But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination." *Burlington*, 548 U.S. at 69.  Plaintiff has alleged no extenuating circumstances, however, that could transform the minor inconveniences she experienced into retaliatory actions "reasonably likely to deter a person" from engaging in protected activity. *See Dudley*, 2014 WL 5003799, at *29 (quoting *Seale v. Madison County*, 929 F. Supp. 2d 51, 76 (N.D.N.Y. 2013)) ("Although courts have found a change in work schedule to be sufficiently adverse for purposes of plausibly alleging a retaliation claim, there must be some extenuating circumstance, of which the plaintiff alleges her employer was aware, that transforms such a change from merely inconvenient to materially adverse.").

---

[3] Similarly, although Plaintiff alleges that Chu "accused" her of violating the Code of Conduct by "making an off-the-cuff joke," Compl. ¶ 79, and instructed Leeser and Quach to "keep [her] under strict observation" while he was away, *id.* ¶ 84, she does not allege that this accusation and instance had any tangible effects that would be "reasonably likely to deter a person" from engaging in protected activity. *See Scott-Robinson*, 2016 WL 7378775, at *5 ("[P]laintiff's subjective belief that she was 'insulted, humiliated, and upset by this obvious discrimination and retaliation,' is insufficient under the NYCHRL's objective standard.").

The only allegation that rises above the level of a trivial harm is the negative performance evaluation that Plaintiff received, which "lower[ed] her rating from B+ to D."  Compl. ¶ 108.  Defendants argue that with respect to this allegation, Plaintiff fails to establish a causal connection to her protected activity.   "A causal connection may be established either directly, through evidence of retaliatory animus directed against the plaintiff by the defendant, or indirectly, by showing that the protected activity was followed closely in time by the adverse action or by other circumstantial evidence."   *White v. Dep't of Correctional Servs.*, 814 F. Supp. 2d 374, 389 (S.D.N.Y. 2011) (citing *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991)).  Plaintiff asserts, again in conclusory fashion, that the negative performance review was "bogus and unwarranted," Compl. ¶ 108, which is plainly insufficient to establish retaliatory animus.  In terms of temporal proximity, the protected activity occurred on October 11, 2019, and Plaintiff received the negative performance evaluation sometime between April and May 2020.  *See* Compl. ¶¶ 105-109.  In the absence of any non-conclusory allegations regarding retaliatory animus, a lapse of six to seven months is too long to establish a causal connection to Plaintiff's protected activity.  *See Kraiem v. JonesTrading Institutional Servs. LLC*, 571 F. Supp. 3d 53, 59-60 (S.D.N.Y. 2021) (quoting *De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019)) ("There is no firm outer limit to the temporal proximity required, but most courts in the Second Circuit had held that a lapse of time beyond two or three months will break the causal inference."); *Dodd v. City Univ. of N.Y.*, 489 F. Supp. 3d 219, 247 (S.D.N.Y. 2020) ("Generally, to show causation through temporal proximity alone, courts in this Circuit require no more than two months to have passed between a protected activity and an adverse action.").[4]

---

[4] Defendants' alleged failure to promote Plaintiff to Vice President could also constitute a retaliatory act, but Plaintiff does not provide a date for that allegation.  Thus, in the absence of direct retaliatory animus, the Court cannot determine whether there is a causal connection between the denied promotion and Plaintiff's protected activity.

Plaintiff thus fails to state a retaliation claim under both the NYCHRL and NYSHRL, and her retaliation claims are dismissed.

### III.     Hostile Work Environment Claim

Prior to October 2019, a plaintiff bringing a hostile work environment claim under the NYSHRL needed to show that the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Tortorici v. Bus-Tev, LLC*, 2021 WL 4177209, at *12 (S.D.N.Y. Sept. 14, 2021) (quoting *Littlejohn*, 795 F.3d at 320-21). On October 11, 2019, the NYSHRL was amended to eliminate the "severe and pervasive" standard and "adopt instead a more protective standard." *Maiurano v. Cantor Fitzgerald Securities*, 2021 WL 76410, at *3 n.2 (S.D.N.Y. Jan. 8, 2021). Under the amended provision, a plaintiff need only show that she was subjected "to inferior terms, conditions or privileges of employment because of [her] membership in one or more of [the] protected categories." N.Y. Exec. Law § 296(1)(h); *see also Alford v. NFTA-Metro*, 2022 WL 17655868, at *6 (W.D.N.Y. Sept. 6, 2022). "Nevertheless, a NYSHRL hostile work environment 'claim will not succeed if the offending actions are no more than petty slights or trivial inconveniences." *Alford*, 2022 WL 17655868, at *6 (quoting *Black v. ESPN, Inc.*, 139 N.Y.S.3d 523 (Table) (Sup. Ct. Feb. 19, 2021)).

The more protective standard applies to the majority of Plaintiff's allegations, which occurred after October 11, 2019. As discussed above, however, most of these allegations amount solely to "petty slights or trivial inconveniences" and thus cannot form the basis of a hostile work environment claim. Even assuming Plaintiff was subjected to "inferior terms, conditions or privileges of employment," she must still plead that these actions were taken "because of" her protected characteristics. N.Y. Exec. Law § 296(1)(h). As discussed, beyond conclusory

allegations, Plaintiff offers no specific factual matter that could raise a plausible inference of discriminatory animus. *See Berrie v. Bd. of Educ. of Port Chester-Rye Union Free Sch. Dist.*, 750 F. App'x 41, 48 (2d Cir. 2018) (quoting *Alfano v. Costello*, 294 F.3d 365, 378 (2d Cir. 2002)) ("Although 'facially neutral incidents may be included' in evaluating [a hostile work environment claim,] there must be 'some circumstantial or other basis for inferring that incidents race-neutral on their face were in fact discriminatory.'").

Plaintiff's hostile work environment claim under the NYSHRL is thus dismissed.[5]

## IV.    Aiding and Abetting and Supervisory Liability

Finally, Plaintiff also brings claims for aiding and abetting under the NYCHRL and NYSHRL, and for supervisory liability under the NYCHRL.  In order to state those claims, however, Plaintiff must first establish an underlying violation. *See Falchenberg v. N.Y. State Dep't of Educ.*, 338 F. App'x 11, 14 (2d Cir. 2009) ("Aiding and abetting is only a viable theory where an underlying violation has taken place."); *Williams v. N.Y.C. Dep't of Educ.*, 2021 WL 1178118, at *12 (S.D.N.Y. Mar. 29, 2021) ("The plain meaning of this language [in N.Y.C. Admin. Code § 8-107(13)(b)] requires that the Plaintiff establish a violation of the NYCHRL by some employee before supervisory liability will attach.").  Because the Complaint fails to plead an underlying violation, the aiding and abetting claims and supervisory liability claim are also dismissed.

---

[5] Plaintiff also alleges that, "[a]s a result of Defendants' purposely [sic] creating a discriminatory, hostile, retaliatory, and intolerable work environment, Plaintiff was unlawfully constructively discharged in or around May 2020, from BOC." Compl. ¶ 109.  To the extent Plaintiff is attempting to bring a constructive discharge claim, that claim fails as well, for the same reasons her hostile work environment claim fails. *See Kunik v. N.Y.C. Dep't of Educ.*, 842 F. App'x 668, 671 (2d Cir. 2021) ("The standard for such a constructive discharge is higher than the standard for establishing a hostile work environment.").

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is granted.  Plaintiff shall have one opportunity to amend the Complaint within thirty days, provided she has a good faith basis to do so.  The Clerk of Court is respectfully directed to terminate the motion pending at docket number 14.

Dated:     February 24, 2023
           New York, New York

_____
Ronnie Abrams
United States District Judge